# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. _____

OTTER PRODUCTS, LLC
a Colorado limited liability company

       Plaintiff

v.

STAGE TWO NINE, LLC,
a California corporation; and

JUSTIN L' HEUREUX,
a California resident

       Defendants

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff, Otter Products, LLC ("Plaintiff"), through its attorneys, Berg Hill Greenleaf Ruscitti, LLP, and for its Complaint against Defendants Justin L' Heureux ("L' Heureux") and Stage Two Nine, LLC ("Stage Two" and collectively with L'Heureux, the "Defendants"), states as follows:

## NATURE OF THE CASE

1. The claims, controversies, and disputes at issue in this civil action stem from the parties' respective rights to tens of thousands of photographic images and works that L'Heureux generated for Plaintiff in exchange for payment. More specifically, during their 4½ year business relationship, Plaintiff retained L'Heureux as an independent contractor to photograph elaborate location-based shoots throughout North America and to generate images to be utilized for Plaintiff's general marketing and branding initiatives. In May 2018, Plaintiff terminated its business relationship with L'Heureux.

1

2. Upon learning that Plaintiff would no longer be using his services, L'Heureux responded by refusing to deliver images from a recent photo shoot in Alaska for which Plaintiff had paid. To make matters worse, despite the parties long-term commercial relationship (during which Plaintiff paid the Defendants over $700,000) and the fact that L'Heureux delivered all of the images from each prior photo shoot without any caveats, conditions, or limitations on Plaintiff's use or distribution of the images, L'Heureux has, for the first time, threatened legal action against Plaintiff premised on claims of copyright infringement unless Plaintiff pays him even more money. While Plaintiff is confident that its rights to use these images are clear based on the express terms of the parties' written independent contractor agreements, and their course of performance and dealings during their 4½ year relationship, an actual controversy now exists and the declaratory relief requested herein will clarify and resolve the central copyright issues in this action.

**PARTIES**

3. Plaintiff is a Colorado limited liability company with a principal place of business located at 209 S. Meldrum Street, Fort Collins, CO 80521. Plaintiff is in the business of developing and selling protective cases for various mobile devices and other accessories.

4. L'Heureux is a commercial photographer based in Southern California. Upon information and belief, L'Heureux is a California resident with a street address of 7172 Estrella De Mar Rd., Carlsbad, CA 92009.

5. Upon information and belief, Stage Two is a California corporation with a principal place of business located at 2575 Fortune Way, Suite C, Vista, CA 92081. Upon information and belief, Stage Two is a corporation controlled by L'Heureux that purports to own certain copyrights and interests in L'Heureux's photographic and video works.

## JURISDICTION AND VENUE

6. This is a civil action seeking declaratory relief under the copyright laws of the United States, and asserting related state law claims for monetary damages and other relief.

7. This Court has federal question subject matter jurisdiction over the claims for declaratory judgment pursuant to 18 U.S.C. § 1331 as this action's central issues involve the federal Copyright Act, 17 U.S.C. § 501 *et al* (the "Copyright Act"). This Court also has subject matter jurisdiction over the claims for declaratory judgment pursuant to 18 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000.

8. This Court has supplemental jurisdiction over the related Colorado state law claims pursuant to 28 U.S.C. §1367, because such claims are part of the same case or controversy and derive from a common nucleus of operative facts.

9. This Court has personal jurisdiction over the Defendants. Defendants have purposefully availed themselves of the laws of the forum state of Colorado and have purposefully directed their activities at the forum state of Colorado by intentionally and knowingly entering into and facilitating a 4½ year business relationship with Plaintiff, a Colorado limited liability company. Defendants negotiated and entered into a long-term master independent contractor agreement with Plaintiff with the intent of having Defendants provide services and deliver photographic works to be used by Plaintiff's marketing and graphic design teams located in Colorado. Defendants directed their photography services and activities at the forum state of Colorado by contractually entering into and performing at least 30 photo shoots for Plaintiff with full knowledge that Plaintiff's marketing and design teams in Colorado were going to use such photos for general marketing and branding purposes. One of the recent

photoshoots at issue in this civil action took place in Colorado, and Defendants traveled to Colorado for that shoot. Defendants also regularly communicated, via email messages, text messages, and telephone calls, with Plaintiff's employees in Colorado. Plaintiff paid Defendants directly for these services via electronic-monetary transfers or through check payments facilitated through Plaintiff's accounting department located in Colorado.

10. Furthermore, Defendants' tortious conduct in unlawfully declaring copyright ownership over, and wrongly withholding certain photographs at issue in this action, have harmed Plaintiff's business and marketing efforts in Colorado and have caused additional actual and consequential damages. Finally, as discussed below, pursuant to the express contractual choice of law, forum selection, and venue clauses in operative agreements at issue, Defendants expressly consented to this Court's jurisdiction.

11. Venue is proper in this district pursuant to 28 U.S.C. §1391 because a substantial part of the conduct and harm complained of herein occurred in this district. Venue is also proper pursuant to the express contractual choice of law, forum selection, and venue clauses in operative agreements, which are discussed below. Through these agreements, Defendants have voluntarily consented to venue in this district.

12. First, the nature of Plaintiff's claims and the Defendants' acts or omission underlying those claims were directed at, and are based upon, Defendants' tortious conduct in this district. Defendants' acts or omissions of withholding and claiming copyright ownership over the photographs to which Plaintiff has an irrevocable, nonexclusive, worldwide implied license have affected Plaintiff's Colorado-based marketing and graphic design teams' ability to use such photographs. As noted above, Defendants willfully and knowingly performed under an

ongoing business and contractual relationship that lasted over 4½ years with Plaintiff, a Colorado limited liability company.

13.     Second, Defendants' acts and omissions have a close nexus to the alleged claims. The entire progression of Defendants' ongoing business relationship with Plaintiff and Defendants' subsequent tortious conduct in wrongfully claiming ownership over and withholding the photographs at issue were directed at, committed in, and resulted in injury in this district. Defendants' acts and omissions have a direct nexus to the alleged claims as the relief sought in this action include declaratory judgments and relief under the Copyright Act and damages as a result of Defendants' tortious conduct. As a result, a substantial part of the conduct and harm complained of herein occurred in this district and venue is proper in this district.

## BACKGROUND

14.     Plaintiff retained L'Heureux as an independent contractor on numerous occasions over the past 4½ years. The basic commercial relationship and understanding between Plaintiff and L'Heureux was straightforward: Plaintiff would request L'Heureux to facilitate elaborate location-based photo shoots to generate promotional images of Plaintiff's products for general marketing initiatives, including for product packaging, product shots, lifestyle shots, general sales, public relations, and web/retail support; L'Heureux would attend those shoots, generate the requested images, and deliver the images to Plaintiff on a hard drive; Plaintiff would pay L'Heureux for the images and services provided; and Plaintiff would utilize the images for the marketing and branding purposes for which they were requested and delivered.

15.     As detailed below, the disputes, claims and controversies at issue in this action arise from and relate to the parties' respective rights to four (4) categories of photographic images generated by L'Heureux at Plaintiff's request: (1) images generated and delivered under

the January 1, 2015 Independent Contractor Agreement (the "L'Heureux ICA") between Plaintiff and L'Heureux (the "ICA Images"); (2) images generated and delivered by L'Heureux through direct engagements with Plaintiff after the parties terminated the ICA (the "Project Specific Images"); (3) images delivered by L'Heureux under Plaintiff's January 1, 2015 Master Independent Contractor Agreement (the "VHP ICA") with Verity Hoskins Production ("VHP"), a third party that provided production services for several shoots at which L'Heureux was utilized as the photographer (the "VHP Images"); and (4) the images taken by L'Heureux during a recent photo shoot in Alaska in May 2018 (the "Alaska Images"). The ICA Images, Project Specific Images, VHP Images, and Alaska Images, are collectively referred to as the "Otter Images" and each category is discussed below.

**A.     The ICA Images**

16.     Plaintiff first retained L'Heureux for several photoshoots in 2014 on a project-to-project basis. In recognition of the volume of services L'Heureux was providing for Plaintiff, on and effective January 1, 2015, the parties entered into a the L'Heureux ICA to cover future retentions and to formalize and memorialize their commercial relationship. The L'Heureux ICA governed dozens of engagements, projects, and photoshoots that L'Heureux facilitated for Plaintiff after the January 1, 2015 effective date.

17.     The scope of services covered by the L'Heureux ICA included photographic and related services requested by Plaintiff for its LifeProof product line and various other product lines, including, but not limited to, product shots, lifestyle shots, packaging shots, sales support, public relations support, and web/retail specific support (the "Services").

18.     The pricing structure for the Services set forth in the L'Heureux ICA included: (i) a monthly retainer of $15,000 for six (6) days of photographic services, plus expenses; and (ii) an

additional $2,500/day, plus expenses, for each day of service during a month beyond the six (6) days covered by the $15,000 retainer.

19. The L'Heureux ICA included a "work made for hire" provision in which L'Heureux expressly represented and acknowledged that "his specific job functions include the creation of patentable and/or copyrightable subject matter and the conception and making of inventions useful to the [Otter] (the "Results)." L'Heureux further agreed that "all Results are and shall be the sole and exclusive property of [Otter]", that "all copyrightable portions of the Results are and shall be deemed 'works made for hire'" and that "[L'Heureux] hereby assigns, transfers, conveys, and delivers to [Otter] all right, title and interest [L'Heureux] may have or may hereafter have in any Results…, whether now exiting or hereafter created."

20. The L'Heureux ICA also included choice of law and venue provisions pursuant to which the parties irrevocably consented to the exclusive jurisdiction of the state courts of Colorado, and agreed that the L'Heureux ICA would be enforced and construed in accordance with Colorado law.

21. During the term of the L'Heureux ICA, L'Heureux generated thousands of promotional photographic works during numerous location based shoots throughout the United States, (defined above as the ICA Images).

22. In connection with each shoot, L'Heureux delivered the images to Plaintiff without any caveats or limitations on Plaintiff's use of the images.

23. Plaintiff paid L'Heureux in full for the ICA Images in the form of the contractually agreed upon $15,000 monthly retainer, plus additional fees and expenses. In total, Plaintiff paid L'Heureux approximately $306,726 during the term of the L'Heureux ICA.

24. Under the express terms of the L'Heureux ICA, the ICA Images are the sole and exclusive property of Plaintiff. In addition, any and all copyrightable portions of ICA Images are "works made for hire" and all right, title, and interest in and to the ICA Images were irrevocably assigned, transferred, conveyed, and delivered to Plaintiff.

**B.    The Project Specific Images**

25. During 2016, Plaintiff advised L'Heureux that, due to corporate restructuring and changes in Plaintiff's overall marketing and branding initiatives, it did not expect to utilize L'Heureux's services as frequently as the L'Heureux ICA and corresponding monthly retainer contemplated (*i.e.* at least six (6) full days per month).

26. As a result, Plaintiff notified L'Heureux of its election to terminate the L'Heureux ICA, effective June 2016.

27. Thereafter, starting in late 2016 until May 2018, Plaintiff utilized L'Heureux's services through two primary vehicles. First, on several occasions, Plaintiff retained L'Heureux directly for specific projects and shoots, and paid him a mutually agreed upon and project specific fee for the images (defined above as the "Project Specific Images"). Second, L'Heureux was engaged at Plaintiff's request and direction for specific shoots that were produced by VHP (see section C. below discussing the VHP Images).

28. Regardless of the contracting structure, the basic commercial relationship between Plaintiff and L'Heureux remained the same. Specifically, Plaintiff requested L'Heureux's services for upcoming shoots and provided information on dates, location, and details regarding the specific promotional and marketing and branding initiatives for the requested images; L'Heureux attended the shoots, generated and delivered the images to Plaintiff in exchange for

payment; and Plaintiff utilized the images for the specific products and promotional and marketing services for which they were intended.

29. The Project Specific Images consist of the images generated by L'Heureux and delivered to Plaintiff through these direct project specific engagements.

30. As with the ICA Images, at the end of each shoot, L'Heureux delivered the Project Specific Images directly to Plaintiff without any caveats, conditions, or limitations on Plaintiff's use of such images. At no point did Defendants condition delivery of any Project Specific Images on use restrictions or licensing terms, or otherwise indicate during the creation or delivery of the images that any use of the images without Defendants' consent was not permissible and/or would constitute infringement. Rather, L'Heureux generated and delivered the Project Specific Images with the intent that Plaintiff use and distribute the images for its promotional and marketing purposes.

31. Plaintiff paid all direct invoices submitted by L'Heureux for the Project Specific Images and related services and expenses, totaling approximately $69,377.20

**C.     The VHP Images**

32. In addition to the Project Specific Images, L'Heureux provided services and delivered images to Plaintiff pursuant to VHP ICA.

33. VHP is an independent contractor that provides production services to Plaintiff. The scope of services covered by the VHP ICA includes scheduling shoots, assisting with shoot concepts, managing shoot sets, recruiting and hiring talent and crews, wardrobe and props, coordination of scheduling and logistics, and other general production services.

34. Similar to the L'Heureux ICA, the VHP ICA includes express provisions regarding the ownership of work products generated by VHP and its consultants in the course of

providing its services covered by the VHP ICA. Specifically, the VHP ICA provides that "all work product generated for [Otter] in the course and scope of performing services under this Agreement shall be the sole and exclusive property of [Otter], and [VHP] herby assigns to [Otter] any and all such rights, of whatever nature, to Client. [VHP] agrees to take reasonable steps to assist [Otter] in appropriate measures to enforce the rights specified in this section."

35. The VHP ICA further provided that "all original works or authorship which are made by [VHP] or its consultants within the course and scope of performing Services under this Agreement and which are protectable by copyright are 'works made for hire,' as that term is defined in the United States Copyright Act (17 U.S.C., Section 101) and as such, are the sole and exclusive property of [Otter]."

36. The VHP ICA also provides that Colorado law governs and that the State of Colorado or the U.S. District Court for the District of Colorado shall have exclusive jurisdiction over any disputes arising under the VHP ICA.

37. Again, with respect to the shoots covered by the VHP ICA, the basic commercial relationship between Plaintiff and L'Heureux remained the same. The only difference was that VHP handled the invoicing and provided general production services for the shoots.

38. The VHP Images consist of the images generated by L'Heureux and delivered to Plaintiff at shoots that were produced by VHP, which include shoots for LifeProof, Aquaphonics, NEXT/SLAM cases, and other Plaintiff products in California, Mexico, and Vancouver, just to name a few locations.

39. VHP submitted invoicing packages to Plaintiff that included L'Heureux's invoices along with other invoices and receipts for the rest of the crew and talent utilized for the particular shoot.

40. Just like the Project Specific Images L'Heureux had delivered pursuant to the L'Heureux ICA, L'Heureux delivered the VHP Images directly to Plaintiff without any caveats, conditions, or limitations on Plaintiff's use of the images and with full knowledge and understanding of the intended marketing uses for those images. Indeed, L'Heureux generated and delivered the VHP Images with the intent that Plaintiff use and distribute the images for its promotional and marketing purposes.

41. Plaintiff paid VHP in full for the VHP Images and related services and, upon information and belief, VHP made the corresponding payments to L'Heureux totaling approximately $145,738.

**D.    The Alaska Images**

42. In early 2018, as part of the parties' ongoing business relationship, Plaintiff and L'Heureux discussed a potential promotional photo shoot in Alaska. L'Heureux indicated that he was interested in the shoot and the parties cleared potential dates for the shoot.

43. Plaintiff planned to use VHP for the Alaska shoot but the preferred producer with VHP was not available for the planned dates. When Plaintiff mentioned this to L'Heureux, he introduced Plaintiff to a producer at Smith x Union, another production company, which agreed to produce the Alaska shoot and to use L'Heureux as the photographer.

44. The Alaska shoot took place between April 25, 2018 through May 1, 2018. Smith x Union handled the scheduling, logistics, and production of the Alaska shoot.

45. Pursuant to a bid submitted by Smith x Union to Plaintiff before the Alaska shoot, Plaintiff paid seventy-five percent (75%) of the total production fees (which included L'Heureux's photography fees) at the time of booking. This upfront fee totaled $52,065 and was

paid by Plaintiff on April 19, 2018. After the shoot, Plaintiff paid Smith x Union the remaining twenty-five (25%) fee in the amount of $9,355.

46. Under Plaintiff's engagement with Smith x Union, it was agreed that Smith x Union would facilitate payment of fees to L'Heureux and the rest of the production crews and talent used for the Alaska shoot. Upon information and belief, Smith x Union has paid L'Heureux in full for the Alaska Images.

47. After the Alaska shoot, on or around May 8, 2018, Plaintiff notified L'Heureux that Plaintiff would no longer be using his services for future Plaintiff shoots and that it was ending the parties' business relationship.

48. Several later, on May 24, 2018, Plaintiff requested that L'Heureux provide the hard drive of the Alaska Images (as he had done without objection after all the other photoshoots for Plaintiff over the past 4½ years) so that they could be utilized for Plaintiff's upcoming marketing schedule.

49. L'Heureux has refused and continues to refuse to deliver the hard drive of the Alaska Images to Plaintiff or to Smith x Union.

50. Moreover, L'Heureux alleged (through recent formal correspondence from legal counsel), and for the very first time in the parties' 4½ year business relationship, that Defendants retained sole ownership of the copyrights to the certain Otter Images, and that Plaintiff's continued use of these images constitutes an infringement. Defendants stated in the same correspondence that it would not deliver the Alaska Images without first receiving a license agreement with respect to certain Otter Images, and additional payments from Plaintiff. Defendants have threatened to initiate legal proceedings for copyright infringement if Plaintiff did not give in to these unfounded demands for additional payment and licensing terms.

## CLAIMS FOR RELIEF

### COUNT I
**(Declaratory Judgment – against both Defendants)**

51. Plaintiff restates and incorporates by reference the facts and averments set forth in the above paragraphs as if full set forth herein.

52. Defendants have claimed federal copyright ownership over the Project Specific Images and/or VHP Images as discussed above and have alleged that Plaintiff has exceeded the scope of any license to use those images, which constitutes an infringement. Defendants combined these claims with demands for money and threatened legal proceedings if Plaintiff did not give in to those demands. Based on Defendants' recent communications with Plaintiff, Plaintiff has reasonably assumed and anticipated that Defendants will seek litigation in pursuit of their respective alleged copyright ownership and infringement claims. An actual controversy exists over: (1) the disputed ownership of the Otter Images under the Copyright Act; (2) whether Defendants granted Plaintiff an irrevocable, nonexclusive, and worldwide implied license under the Copyright Act through its course of conduct and dealing; and (3) whether Plaintiff infringed any copyright pertaining to Defendants' photographs by exceeding the scope of any implied license as Defendants have alleged. 17 U.S.C. § 101 *et al*.

53. It would serve a useful purpose for this Court to clarify the legal relations at issue and to clarify the federal copyright disputes regarding the ownership of and the scope of any implied license of the photographs at issue as such clarification will resolve the central copyright issues in this action.

54. Plaintiff's pursuit for a declaratory remedy is not being used merely for the purpose of procedural fencing or to provide an arena for a race to res judicata. Rather an actual

controversy currently exists and Defendants' tortious conduct has and continues to harm Plaintiff.

55. This declaratory action would not increase friction between federal and state courts as this action is governed by the Copyright Act and this Court has supplemental jurisdiction over the related state law claims asserted herein.

56. There is not an alternative remedy which is better or more effective because declaratory relief over the copyright ownership and licensing issues form the central claims in this case and no other relief can be sought to declare the rightful ownership of the Otter Images, and the scope of Plaintiff's implied license.

57. Accordingly, Plaintiff seeks Declaratory Judgment, pursuant to the federal declaratory statute, 28 U.S.C. § 2201 *et seq*. and Fed.R.Civ.P. 57, and respectfully requests that this Court declare as follows:

 a. That the ICA Images and VHP Images are the sole and exclusive property of Plaintiff; that all copyrightable portions of such images are "works made for hire" as that term is defined in the Copyright Act 17 U.S.C. § 101; and that all right, title and interest in such images have been irrevocably assigned, transferred, conveyed, and delivered to Plaintiff.

 b. That Defendants, by receiving good and valuable consideration from Plaintiff for the Project Specific Images and Alaska Images, and through the parties' course of conduct over their 4 ½ year business relationship, have granted Plaintiff under the Copyright Act, 17 U.S.C. 204 *et al.*, a non-exclusive, irrevocable, worldwide implied license to use, in its sole discretion, the Project Specific Images and Alaska Images;

c. That Defendants do not control sole and exclusive copyright ownership over the Project Specific Images, VHP Images, or Alaska Images under the Copyright Act;

d. That Plaintiff has not exceeded the scope of any non-exclusive, irrevocable, and worldwide implied license as set forth above, 17 U.S.C. § 501 *et al.* through its past and current use of the Otter Images; and through Defendants knowledge of the intended and actual uses of those images and failure to assert or enforce any claimed infringement of the scope of the implied license.

e. That Plaintiff, through its use of the Otter Images pursuant to any implied license as set forth above, has not infringed any of Defendants' alleged copyright ownership or intellectual property rights in the ICA and VHP images under the Copyright Act, 17 U.S.C. § 501 *et al.*;

f. That Plaintiff, pursuant to any implied license as set forth above, has the right to possess and use, in its sole discretion, the Alaska Images pursuant to 17 U.S.C. 204 *et al.*; and/or

g. In the alternative, declare that the Otter Images are governed by the L'Heureux ICA and/or the VHP ICA and that Plaintiff owns sole and exclusive intellectual property rights in the resulting photos pursuant to the work-for-hire provisions in the L'Heureux ICA and/or the VHP ICA.

## COUNT II
**(Breach of Contract)**

58. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

59. Plaintiff entered into a legally binding contract with Defendants to provide photographic services for a photoshoot in Alaska. Plaintiff offered Defendants the opportunity to

15

generate the images for the Alaskan shoot and the parties discussed and mutually agreed upon the material terms of their agreement, including the dates for the shoot, the location, and payment terms. The parties also agreed that Defendants would provide a hard drive of the images at the conclusion of the shoot, which is consistent with the parties' prior course of dealing and course of performance.

60. Defendants verbally and through their performance accepted Plaintiff's offer, intending to be bound by the terms of the agreement, by attending the photoshoot, by taking the images at the photoshoot, and by submitting invoices to Plaintiff through the third party production company (Smith x Union) that managed the shoot.

61. Plaintiff has fully performed its obligations under the agreements with Defendants and with Smith x Union and has paid the full agreed upon amount set forth in Defendants' invoices and in Smith x Union's invoices.

62. Defendants' have materially breached the agreement by failing to deliver a hard drive of the Alaska Images.

63. Defendants' breaches have caused and will continue to cause Plaintiff actual and consequential damages in an amount to be determined at trial.

## COUNT III
**(Civil Theft Pursuant to C.R.S. §§ 18-4-401 - 405)**

64. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

65. Defendants knowingly exercised, and continues to exercise, dominion and control over the Alaska Images, without authorization and/or by deception, and, upon information and belief, with knowledge that Plaintiff paid for the Alaska Images. Upon information and belief, payment for the Alaska Images has been tendered to Defendants.

66. Defendants intended to deprive Plaintiff permanently of the use or benefit of the Alaska Images, and have refused to deliver the Alaska Images to Plaintiff despite repeated demands and full payment from Plaintiff.

67. As detailed above, Defendants' acts constitute theft pursuant to C.R.S. §§ 18-4-401 - 405.

68. As a result of Defendants' acts, Plaintiff has suffered damages in an amount to be determined at trial. Pursuant to C.R.S. § 18-4-405, Plaintiff is further entitled to recover three times the amount of actual damages in addition to attorney fees and costs.

## COUNT IV
### (Conversion)

69. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

70. Plaintiff has the right to possess the Alaska Images, and is the rightful owner of those images.

71. Once Plaintiff paid Smith x Union for the Alaska Images, and Smith x Union paid Defendants for those images, Defendants had an obligation to deliver the Alaska Images to Plaintiff.

72. Despite Plaintiff's notice and demands to Defendants to deliver the Alaska Images, Defendants have refused and continue to exercise dominion and control over those images without authorization and with actual knowledge that the Alaska Images have been paid for by Plaintiff.

73. Defendants' refusal to deliver the Alaska Images has deprived Plaintiff of possession or use of the Alaska Images for its planned marketing and branding initiatives.

74. Defendants' wrongful conversion, acts, and interferences have proximately caused damages to Plaintiff, in an amount to be proven at trial.

## COUNT V
### (Unjust Enrichment)

75. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

76. At Plaintiff's expense, a benefit was conferred on Defendants, in the form of Plaintiff's payment for the Alaska Images.

77. This benefit was accepted by Defendants under circumstances that would be unjust for it to be retained by Defendants because Defendants refuse to deliver the Alaska Images.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for entry of judgment in its favor on each of its claims for relief. Plaintiff further prays that the Court:

A. Grant Plaintiff's claim for Declaratory Judgment as requested above;

B. Order Defendants to deliver to Plaintiff, via hard drive, all Alaska Images pursuant to the parties' agreement;

C. Award Plaintiff all economic and noneconomic damages in an amount to be proven at trial;

D. Award Plaintiff treble damages and attorney fees as provided in C.R.S. § 18-4-405;

E. Award Plaintiff pre- and post-judgment interest as provided by law;

F. Award Plaintiff its costs, attorneys' fees, and such other allowable under the parties contracts and/or under 17 U.S.C. § 505; and

G. Grant Plaintiff such other and further relief at law or in equity as the Court shall deem just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a jury trial on issues so triable.

DATED: July 6, 2018

                                          Respectfully submitted,

                                          BERG HILL GREENLEAF RUSCITTI LLP

                                          By:  /s/ Jack P. Storti
                                                   Jack P. Storti
                                                   Ryan K. Lorch
                                                   1712 Pearl Street
                                                   Boulder, CO 80302
                                                   Tel: (303) 402-1600
                                                   Email: jps@bhgrlaw.com
                                                   Email: rkl@bhgrlaw.com

                                          ATTORNEYS FOR PLAINTIFF