## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01724-CMA-NYW

OTTER PRODUCTS, LLC,

Plaintiff,

v.

STAGE TWO NINE, LLC, and
JUSTIN L'HEUREUX,

Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Nina Y. Wang

This matter comes before the court on Defendants Stage Two Nine, LLC and Justin L'Heureux's ("STN" and "Mr. L'Heureux" individually; collectively "Defendants") Motion to Dismiss Under FRCP 12(b)(6) and 12(b)(1) ("Motion to Dismiss") [#12, filed August 20, 2018]. Pursuant to the Order Referring Case and Memorandum dated August 28, 2018 [#15; #16], the Motion to Dismiss was referred to the undersigned Magistrate Judge. After carefully reviewing the Motion to Dismiss, the parties' briefing, the entire case file, and the applicable case law, I respectfully **RECOMMEND** that the Motion to Dismiss be **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

Otter Products LLC ("Otter" or "Plaintiff") is a Colorado-based company in the business of developing and selling protective cases for mobile electronic devices and accessories. [#1 at ¶ 3]. Justin L'Heureux is a photographer with a longstanding

relationship with Otter.   [*Id.* at ¶ 14].   Stage Two Nine, LLC is a California corporation controlled by Defendant L'Heureux that purports to own certain copyrights and interests in Mr. L'Heureux's photographic and video works.

Plaintiff identifies four different categories of photographic images at issue in this action.   In 2015, Otter and Mr. L'Heureux entered into an independent contractor arrangement ("ICA") for promotional photo shoots ("the ICA photos").   [*Id.* at ¶¶ 15, 16–24].   Mr. L'Heureux was paid approximately $306,726 for the ICA photos.   [*Id.*].   In 2016, Otter terminated the ICA due to changes in its business.   From 2016 to May 2018, Otter utilized Mr. L'Heureux's services on a case-by-case basis either contracting with him directly ("the Project Specific Images") or through third party, Verity Hoskins Production ("VHP") ("the VHP images").   [*Id.* at ¶¶ 25–31].   Otter paid $69,377.20 for the Project Specific Images through direct invoicing by Mr. L'Heureux.   [*Id.* at ¶ 31].   Otter and VHP entered its own ICA with VHP, and Mr. L'Heureux's charges were included in the VHP invoicing.   [*Id.* at ¶ 39].   Otter believes that Mr. L'Heureux was paid $145,738 for the VHP Images.   [*Id.* at ¶¶ 15, 32–41].

In early 2018, Plaintiff and Defendant L'Heureux entered into another agreement for a photo shoot, this time in Alaska ("Alaska Images") and using the third-party Smith x Union ("Union").   [*Id.* at ¶¶ 42–50].   After Mr. L'Heureux conducted this photo shoot, Otter notified Mr. L'Heureux that it would no longer be using his services for future shoots and it was ending the Parties' business relationship.   [*Id.* at ¶ 47].   Otter paid Smith x Union in whole, and believes that Smith x Union has paid Mr. L'Heureux in full.   [*Id.* at ¶¶ 45-46].   Nevertheless, Defendants refused to turn over the Alaska Images to Otter unless it

received additional payment from Otter.[1]  [*Id.* at ¶ 50].  Otter alleges that Mr. L'Heureux alleged through counsel that he has sole ownership of the copyrights of certain of the above-described photographic images, Plaintiff is infringing on his copyright, and Otter's continued use of such images constitutes copyright infringement.  [*Id.*].  In that same correspondence from counsel, Mr. L'Heureux threatened to bring a copyright infringement suit against Otter.  [*Id.*].  Otter does not specify to which images Mr. L'Heureux is claiming entitlement, and did not attach the correspondence as part of the Complaint.

Otter filed this action on July 6, 2018, asserting five claims for relief.  *See* [#1].  The first claim is for declaratory judgment and contains seven distinct subparts.  [*Id.* at ¶ 57].  Specifically, Otter seeks a declaration that: (a) the ICA and VHP Images are "works made for hire" under the Copyright Act and as such are the sole and exclusive property of Plaintiff; (b) Plaintiff has a non-exclusive, irrevocable, worldwide implied license to use, in its sole discretion, the Project Specific Images and Alaska Images ("Implied License"); (c) L'Heureux does not own the sole and exclusive copyright for the Project Specific Images, VHP Images, or Alaska Images; (d) Otter has not exceeded the scope of the Implied License; (e) Otter has not infringed any copyright ownership or intellectual property rights in the ICA and VHP images by virtue of the Implied License; (f) that Plaintiff, pursuant to the Implied License, has the right to possess and use the Alaska Images; (g) that, in the alternative, all images herein described are governed by the now-terminated ICA and/or

---

[1] Defendants claim that "a hard drive with the [Alaska] images was delivered (under protest and a reservation of rights) three days before Otter nevertheless insisted on serving the Complaint," [#12 at 14], and Mr. L'Heureux's affidavit states that he delivered the photos on July 12, 2018.  [#12-1 at ¶ 3].

VHP arrangements such that Otter owns sole and exclusive intellectual property rights in the resulting photos pursuant to the work-for-hire provisions. [*Id*.].[2] Otter brings four other state law claims relating solely to the Alaska Images.

Claim 2 is a breach of contract claim for the non-delivery of the Alaska Images. [*Id*. at ¶¶ 58–63]. Claim 3 is for statutory civil theft premised on the non-delivery of the Alaska Images. [*Id*. at ¶¶ 64–68]. Claim 4 is for conversion and Claim 5 is for unjust enrichment, both of which concern the Alaska Images. [*Id*. at ¶¶ 69–77]. Otter brings these state claims under this court's supplemental jurisdiction, arguing that Claims 2 to 5 derive from the same common nucleus of fact as Claim 1, which Plaintiff asserts is covered both by federal question jurisdiction, as it requires interpretation of the Copyright Act, and diversity jurisdiction, since the parties are completely diverse and the amount in controversy allegedly exceeds $75,000. [*Id*. at ¶¶ 7, 8]. Though only Claim 1 denotes as such, presumably all claims are directed at both Defendants.

Defendants moved for dismissal on August 20, 2018, arguing primarily that Claim 1 fails because Otter has not met the registration requirement in 17 U.S.C. § 411(a), which requires registration as a precondition to "a civil action for infringement." [#12 at 7–9]. Defendants further argue that Claims 3 and 4 fail to state a claim under the economic loss rule. [*Id*. at 9–13]. Defendants argue that the unjust enrichment claim fails because it is duplicative of the others. [*Id*. at 13–14]. Finally, Defendants challenge the subject matter jurisdiction of all four state-law claims premised on the failure of the declaratory judgment

---

[2] The court will refer to these sub-parts of Claim 1 in the following format: (1)(letter)—e.g., (1)(f).

claim. [*Id.* at 14–15]. Specifically, Defendants contend that there is no supplemental jurisdiction over the state-law claims because Claim 1 fails as described above and Plaintiff does not plead that there is diversity jurisdiction over the four state law claims; even if Plaintiff had alleged diversity jurisdiction over those claims, that assertion would fail as the amount in controversy over the state law claims does not exceed $75,000. [*Id.* at 15]. Defendants represent that they have turned over the Alaska Images under protest and subject to a reservation of rights. [*Id.*; #12-1 at ¶ 3].

Otter filed a Response on September 12, 2018. [#24]. In it, Otter argues that the registration requirement only applies to claims for infringement, not the claims at issue which seek merely to clarify the rights of the parties regarding copyright ownership and use. [*Id.* at 3–5]. Insofar as Defendants' argument is premised on registration as a jurisdictional prerequisite, that proposition was directly rejected by the United States Supreme Court in *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010). [*Id.* at 5–8].

## LEGAL STANDARDS

### I.      Subject Matter Jurisdiction

With respect to its first claim for declaratory judgment, Plaintiff invokes the court's federal question subject matter jurisdiction pursuant to the Copyright Act, 17 U.S.C. § 501 *et seq.*, and diversity jurisdiction pursuant to 28 U.S.C. § 1332. [#1 at ¶ 7]. Otter further contends that the court has supplemental jurisdiction over the related Colorado state law claims identified in Claims 2-5. [*Id.* at ¶ 8].

## A.    Arising Under Copyright Law

Though Defendants did not argue in their affirmative Motion to Dismiss that Plaintiff's Declaratory Judgment claim failed to "arise under" the federal Copyright Act to confer subject matter jurisdiction, on Reply, they contend that "a declaratory relief claim to declare non-infringement based upon an implied exclusive license presents no federal question." [#25 at 5].  Courts are obliged to consider the presence or absence of subject matter jurisdiction *sua sponte* even if not raised by the parties. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level.").  The United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has adopted a test from the Second Circuit to determine whether a claim arises under the Copyright Act: "[A] suit 'arises under' the Copyright Act if: (1) the complaint is for a remedy expressly granted by the Act, e.g., a suit for infringement or, (2) the complaint asserts a claim requiring construction of the Act." *1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1050 (10th Cir. 2006).

## B.    Declaratory Judgment Regarding Copyright Infringement

The Declaratory Judgment Act of 1934 ("Declaratory Judgment Act") provides that "[i]n a case of actual controversy," a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  Declaratory judgment actions must satisfy the Article III case or controversy requirement just as any other case must. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–40 (1937) (upholding constitutionality of Declaratory

Judgment Act by interpreting the Declaratory Judgment Act to require an Article III case or controversy).   "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Md. Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

### C.    Jurisdiction Over State Law Claims

***Diversity Jurisdiction.*** A federal court may exercise jurisdiction over a non-federal question claim if the litigants are completely diverse and the amount in controversy exceeds $75,000.   28 U.S.C. § 1332(a).   For cases commenced in federal court, the amount in controversy is that claimed by the Plaintiff if made in good faith and supported by the underlying factual allegations.  *Adams v. Reliance Standard Life Ins. Co.*, 225 F.3d 1179, 1183 (10th Cir. 2000).   It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.  *Id.*

***Supplemental Jurisdiction.*** A federal court has the discretion to exercise supplemental jurisdiction over claims that are incidental to federal question claims that are properly before the court and over which it would normally lack jurisdiction so long as the supplemental claims arise from a "a common nucleus of operative fact" such that a litigant "would ordinarily be expected to try them all in one judicial proceeding."  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *Sullivan v. Scoular Grain Co. of Utah*, 930 F.2d 798, 803 (10th Cir. 1991).   This jurisdiction extends to "claims having a factual and logical dependence on 'the primary lawsuit'" so long as that "primary suit" has

a sufficient and independent basis for federal jurisdiction. *Peacock v. Thomas*, 516 U.S. 349, 355 (1996).

The authority to hear such claims is premised on a two-part test: (1) the federal claim must have substance sufficient to confer subject matter jurisdiction on the court and (2) "the state and federal claims must derive from a common nucleus of operative fact. *Gibbs*, 383 U.S. at 725; *Sullivan*, 930 F.2d at 803. A court may hear such supplemental claims; it is not obliged to. *Id.* (referring to supplemental jurisdiction as a "doctrine of discretion").

### D.      Rule 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible."). To state a claim that is plausible on its

face, a complaint must "sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

### I.      Subject Matter Jurisdiction

The court begins, as it must, with Defendants' arguments related to subject matter jurisdiction.  Though not the focus of Defendants' arguments, this court first considers whether the Complaint presents any federal question arising under the Copyright Act, and then considers Defendants' main argument, that § 411(a)'s registration requirement is a bar to this action.

### A.      Arising Under Copyright Law

In this case, Otter offers seven distinct bases for declaratory relief.  Defendants argue Otter's claim for declaratory relief based on an implied license presents no federal question.  [#25 at 5].  Applying the relevant formulation adopted by the Tenth Circuit, this court has satisfied itself that at least some portions of Otter's Declaratory Judgment arise under the Copyright Act.  To arise under the Copyright Act, a claim must either seek relief provided by the Act or be pleaded in such a manner as to require substantive construction of the Act:

> [A]n action 'arises under' the Copyright Act if and only if the complaint is for a remedy expressly granted by the Act, e.g., a suit for infringement or for the statutory royalties for record reproduction, or asserts a claim requiring construction of the Act . . . or, at the very least and perhaps more doubtfully, presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim. The general interest that copyrights, like all other forms of property, should be enjoyed by their true owner is not enough to meet this last test.

*T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 828 (2d Cir. 1964), *cert. denied*, 381 U.S. 915 (1965) (citations omitted).

The *T.B. Harms* formulation has been approvingly cited and applied in the Tenth Circuit even before *1mage* adopted it. *See 1mage*, 459 F.3d at 1049 (citing *T.B. Harms*, among others, and stating "[w]e agree with that authority") *Oklahoma Nat. Gas Co. v. LaRue*, 156 F.3d 1244 (Table) (10th Cir. 1998) (referring to the *T.B. Harms* formulation as "now well accepted"); *Shepard's McGraw-Hill, Inc. v. Legalsoft Corp.*, 769 F. Supp. 1161, 1166 (D. Colo. 1991) (applying the "well-established rule" set forth in *T.B. Harms*). Applying this test, at least three of Plaintiff's declaratory claims arise under the Copyright Act and provide the court with a basis for the exercise of supplemental jurisdiction over the remainder of the suit.

Claim 1(a) asks this court to declare that the ICA and VHP Images are copyrightable "works made for hire" under § 101 of the Copyright Act, that such images are the sole and exclusive property of Otter, and finally that "all right, title and interest in such images have been irrevocably assigned, transferred, conveyed, and delivered to Plaintiff." [#1 at ¶¶ 16–24; 57]. Characterizing something as a "work for hire" in a contract is typically—though not always—sufficient, as "work for hire" is a statutorily defined term. As pled, this claim would require this court to interpret the statutory "work made for hire" provision, and thus Claim (1)(a) arises under the Copyright Act pursuant to *T.B. Harms*. *See JustMed, Inc. v. Byce*, 600 F.3d 1118, 1124 (9th Cir. 2010) (applying *T.B. Harms* and holding that "federal jurisdiction may be appropriate if resolution requires application of the work-for-hire doctrine of the Copyright Act"); *Pastime LLC v. Schreiber*, No. 16-CV-

8706 (JPO), 2017 WL 6033434, at *5 (S.D.N.Y. Dec. 5, 2017) (holding that an allegation of ownership under the work made for hire provision arose under the Act and gave subject matter jurisdiction).  *Cf. Rogers v. Yonce*, No. 07-CV-704-GKF-PJC, 2008 WL 2853207, at *10 (N.D. Okla. July 21, 2008) (claim did not arise under the Act when claim for ownership was based solely on the written agreement between the parties); *Estate Examinations Co. v. ECG Enterprises, Inc.*, No. 06-CV-3024 (JFB), 2006 WL 3248003, at *3 (E.D.N.Y. Nov. 7, 2006) (same).[3]  Similarly, in Claim 1(c), Otter asks the court to declare that Defendants do not "do not control sole and exclusive copyright ownership over the Project Specific Images, VHP Images, or Alaska Images under the Copyright Act." [#1 at ¶ 57].  While this claim could be more artfully pled, this court construes it as asserting a claim for ownership under the Copyright Act, rather than a particular contractual grant.  Accordingly, this court finds that Claims 1(a) and 1(c) arise under the Copyright Act.

Claim (1)(e) also asks the court to declare that Plaintiff has not infringed any of Defendants' copyrights in the ICA or VHP Images because of the purported Implied License.  [#1 at ¶ e].  Precedent from the Tenth Circuit directs this court to examine the character of the declaratory-defendant's putative claim when evaluating whether the claim arises under federal law.  *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*,

---

[3] Plaintiff could have brought this as a state law claim for breach of contract, but because Plaintiff asserts a claim for relief which requires the court to interpret the Copyright Act and not the contract between the parties, this court concludes that Claim (1)(a) arises under the Copyright Act.  *See Effects Assocs., Inc. v. Cohen*, 817 F.2d 72, 73 (9th Cir. 1987) (noting that a Plaintiff may have the option of bringing a claim under solely state law provisions or in a manner arising under Copyright Act).

693 F.3d 1195, 1203 (10th Cir. 2012); *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 964 (10th Cir. 1996).   The claim against which Otter brings this defense/claim is an action for copyright infringement under 17 U.S.C. § 501(a) which arises under the Act.   Thus, the addition of the non-infringement issue makes this claim arises under the Act even though other relief sought in Claim 1 may not.

### B.   Copyright Registration as a Prerequisite to Suit

Defendants' main argument that Otter's claim for declaratory relief is premature, as "anticipatory to a perceived threat of suit for copyright infringement."  [#12 at 7].  While the characterizations of "premature" and "anticipatory" might otherwise invoke an analysis with respect to ripeness, the sole argument presented by Defendants' Motion to Dismiss is that copyright registration is a prerequisite to suit, and because Defendants have not registered a copyright as to any of the images at issue, Otter may not proceed with Claim 1.  [*Id.* at 8].  Defendants' affirmative motion did not include any substantive discussion of ripeness (except as implicated by the registration issue) and indeed, did not include the term "ripeness."   [#12].   On Reply, in response to an argument made by Plaintiff, Defendants make passing reference to ripeness.  [#25 at 2].  But again, they contend that "[u]nless and until registration occurs, Otter is at best seeking to avoid the aim of an unloaded gun" [*id.*]—presumably contending (though not explicitly argued) that there is not a reasonable apprehension of suit absent registration.  While this court is not obligated to consider arguments raised for the first time on Reply, it notes that Otter first raised the issue and had a fair opportunity to address it.  Therefore, the court considers both theories

in its analysis of whether Otter may proceed with this action absent registration of copyrights by Defendants.

Defendants argue that the registration requirement in the Copyright Act, 17 U.S.C. § 411(a) applies to Otter's Complaint and deprives this court of jurisdiction over the case. [#12 at 8].  Without such registration, Otter may not proceed with Claim 1, either because registration is a jurisdictional prerequisite as a matter of law, or because there is not a reasonable apprehension of suit.  Otter contends that the Supreme Court's decision in *Reed Elsevier* made it clear that § 411 is a statutory precondition to a suit for infringement, and neither applies to declaratory judgment actions nor presents a jurisdictional bar to suits involving unregistered copyrights.  [#24 at 3–8].

### 1.      Is the Registration Requirement Jurisdictional?

The Copyright and Patent Clause of the United States Constitution provides that Congress shall have the power to "promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries."  U.S. Const. Art. I § 8, cl. 8.  Copyright protection "subsists . . . in original works of authorship fixed in any tangible medium of expression."  *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 432 (1984) (citing 17 U.S.C. § 102(a)).  A copyright "exists automatically upon the creation and fixation of an original work of authorship in a tangible medium of expression." *Chere Amie, Inc. v. Windstar Apparel, Corp.*, 191 F.Supp.2d 343, 350 (S.D.N.Y. 2001); *see also* 17 U.S.C. § 102(a) ("Copyright protection subsists . . . in original works of authorship fixed in any tangible

medium of expression . . . from which they can be perceived, reproduced, or otherwise communicated[.]").

Copyright registration is encouraged but it is not required. 17 U.S.C. § 408(a) (registration is permissive). An unregistered copyright is still subject to copyright protection. *Johnson v. Gordon*, 409 F.3d 12, 19–20 (1st Cir. 2005) ("[R]egistration is no longer a statutory prerequisite to copyright protection."). The registration requirement established in 17 U.S.C. § 411(a) is a general precondition to a "civil action for infringement," but is not required for all "civil actions for infringement." Section 411(c) "permits courts to adjudicate infringement actions over certain kinds of unregistered works where the author declares an intention to secure copyright in the work and makes registration for the work, if required by subsection (a), within three months after the work's first transmission." *Reed Elsevier*, 559 U.S. at 165 (quotation marks omitted and formatting altered). And the United States Supreme Court clearly determined in *Reed Elsevier* that § 411(a)'s registration requirement is not jurisdictional, i.e., does not implicate a court's adjudicatory authority, but rather is a non-jurisdictional precondition to filing suit. 559 U.S. at 1247. The distinction is not without difference, as non-jurisdictional prerequisites to suit may be excused by the court in certain circumstances, or subject to waiver and forfeiture. *See, e.g., Kansas by & through Kansas Dep't for Children & Families v. SourceAmerica*, 874 F.3d 1226, 1247 (10th Cir. 2017).

## 2. Does Otter Present a Ripe Claim?

On Reply, Defendants briefly contend that even if registration is not a jurisdictional prerequisite, "anticipating a copyright infringement case is not ripe until a copyright

infringement action can be brought, which still requires registration in the Tenth Circuit." [#25 at 4]. This court respectfully disagrees for the following reasons.

As an initial matter, at the core, Defendants' argument is simply a repackaged argument that § 411(a) registration requirement presents a jurisdictional bar to suit. If a litigant could never have a reasonable apprehension of suit without a copyright being registered, then ripeness would preclude a court from exercising subject matter jurisdiction in every case. Such an outcome is incompatible with the Supreme Court's ruling in *Reed Elsevier*. Certainly, the lack of copyright registration could be one factor in considering whether there is an actual "case and controversy" between the litigants to justify subject matter jurisdiction under Article III. *Nashville, Chattanooga & St. Louis Ry. v. Wallace*, 288 U.S. 249, 259 (1933); *Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1376 (10th Cir. 2011) (holding that it is not the role of the federal courts to resolve abstract issues of law, and to that end Article III prohibits courts from issuing advisory opinions). But in this case, Defendants identify it as the only basis for arguing that the action is premature. Plaintiff alleges that "Defendants have claimed federal copyright ownership over the Project Specific Images and/or VHP Images . . . and have alleged that Plaintiff has exceeded the scope of any license to use those images, which constitutes infringement." [#1 at ¶ 13]. They fail to address why Plaintiff's allegations that Defendants threatened legal action premised on copyright infringement over at least the VHP Images; the formal correspondence from legal counsel that Defendants' retained sole ownership of copyrights to certain images; and would not deliver the Alaska Images without first receiving a license agreement are insufficient to "show that there is a

15

substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).  Even in turning over the raw Alaska Images to Otter, Defendants indicated that "[n]o license is express or implied, and Otter has not obtained usage rights."  [#12-2].  This court finds that Plaintiff has alleged sufficient facts, taken as a whole under the circumstances, to satisfy the ripeness requirement of Article III.

### 3.   Registration as a Precondition to a Declaratory Judgment Claim

The court turns next to the question of whether copyright registration is a non-jurisdictional precondition to this case.  The Parties point to no Tenth Circuit or District of Colorado case precisely on point, and this court could find none independently.  Accordingly, the court looks to the plain language and legislative framework of the Copyright Act and authority outside of this Circuit.

The plain text of the statute refers to "a civil action *for infringement*," not any civil action.  Infringement is a term of art defined in § 501(a) with enumerated statutory provisions for equitable and monetary relief in §§ 502–505.  Registration is a prerequisite to statutory damages and attorney's fees in §§ 504 and 505 under § 412, but that section goes no further.  If § 411 precluded *any* action that "anticipates a copyright infringement suit" as Defendants argue, then there would be no need for § 412 to limit available remedies for claims brought without registration because there would be no such claims in the first place.

Even when § 501 infringement is the substantive issue in the case—as here with Claim (1)(e), the declaratory claim for non-infringement—courts have concluded that the registration requirement does not always apply when considering a prevailing party's entitlement to statutory costs and fees. *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 263 (2d Cir. 2015) ("[Defendant] argues that [§ 412] prohibits [Plaintiff], which did not register a copyright in the film, from collecting fees and costs. But [Plaintiff] has not brought an "infringement action."  It seeks instead a declaratory judgment that it has not infringed on [Defendant's] putative copyright."); *Latin Am. Music Co. v. Am. Soc'y Of Composers, Authors & Publishers*, 642 F.3d 87, 90 (1st Cir. 2011) (same); *Corwin v. Quinonez*, 858 F. Supp. 2d 903, 908–09 (N.D. Ohio 2012) (collecting authority distinguishing a copyright infringement action subject to § 411 from other actions).  These cases underscore that the statute's reference to "infringement action" does not encompass every case where infringement may be at issue.

To subject declaratory judgment actions of non-infringement which seek to establish the plaintiff's *non*-infringement to § 411(a)'s registration requirement would improperly skew the balance between copyright holders and others in or using the creative arts.  Section 408 of the Copyright Act permits the "owner of the copyright" to seek registration in the Copyright Office.  Logically, a non-owner/potential-infringer cannot properly seek registration.  Accordingly, a copyright holder could create a cloud over the use or creation of work by declining to register a copyright but yet threatening a potential infringer with legal action.  In that scenario, the application of § 411(a) registration requirement would *de facto* divest the potential infringer of any legal recourse.  *See Latin*

*Am. Music Co.*, 642 F.3d at 90.  Yet a copyright holder could elect to register a copyright at any time and then commence suit.  *Telebrands Corp. v. Exceptional Prod. Inc.*, No. 11-CV-2252, 2011 WL 6029402, at *3 (D.N.J. Dec. 5, 2011).

The court therefore declines to adopt Defendants' claim that the registration requirement applies in this case and finds that none of Plaintiff's claims are subject to dismissal under § 411(a) of the Copyright Act.

## II.     Subject Matter Jurisdiction over Supplemental Claims

As part of its duty to assure itself of subject matter jurisdiction, the court now turns to whether there is supplemental jurisdiction over the state law claims brought by Otter. Defendants argue that the failure of federal question jurisdiction necessarily requires the dismissal of state law claims premised on supplemental jurisdiction.  [#12 at 14].   In addition, Defendants argue that there is no separate diversity jurisdiction over Otter's state law claims, as Otter does not bring this action pursuant to the court's diversity jurisdiction and does not contest the assertion that the amount in controversy is below the $75,000 threshold for diversity jurisdiction.  [#1 at ¶ 8; #12 at 14; #24].

A district court has supplemental jurisdiction over state law claims that arise from a common nucleus of operative fact with the federal law claim such that together the claims form "part of the same case or controversy."  28 U.S.C. § 1367(a); *Estate of Harshman v. Jackson Hole Mountain Resort Corp.*, 379 F.3d 1161, 1164 (10th Cir. 2004). The question then becomes whether the declaratory claims arising under the Act, which may only implicate certain images, share a sufficient factual nexus with the remainder of the photographic images shot by Mr. L'Heureux such that those federal question claims

18

may provide this court with supplemental jurisdiction over the others.  Based on the record before it, this court concludes that the claims are sufficiently related for the exercise of supplemental jurisdiction.

The Parties in this case have a longstanding relationship, and the images at issue in this case were taken over a more-than-three-year period from 2015 to early 2018.  [#1 at ¶¶ 16, 42].   These photos were shot under several different contracts, pursuant to different business arrangements, and even using different intermediaries such as Union or VHP.  [*Id.* at ¶¶ 16–50].  However, Otter pleads that Defendants' demand following the dispute over the Alaska Images was not limited to simply the Alaska Images.  Instead, Plaintiff alleges that Defendants asserted that they owned *all* of the images at issue in this case or that Plaintiff had exceeded its licenses to certain of those images.  [#1 at ¶¶ 50, 52].  A single demand for payment under multiple contracts based on the same or substantially the same legal basis is sufficiently related.  Under the current facts, all claims arise from a common nucleus of operative fact such that the exercise of supplemental jurisdiction is appropriate.

## III.    Supplemental Claims Individually

The court now turns to Defendants' specific challenges pursuant to Rule 12(b)(6) to the individual state law claims, except the Second Claim for breach of contract which is not challenged in Defendants' Motion to Dismiss except as to subject matter jurisdiction as addressed above.

### A.      Claims Three and Four: Civil Theft and Conversion

In Claim Three, Otter alleges that Defendants' retention of the Alaska Images constitutes civil theft under Colo. Rev. Stat. § 18-4-405.  [#1 at ¶¶ 64–68].  In Claim Four, Otter alleges that L'Heureux's retention of the Alaska Images constitutes conversion under Colorado law.  [#1 at ¶¶ 69–74].  These claims will be analyzed together because the economic loss rule operates to preclude both claims on the same basis.

Defendants argue that the civil theft claim fails because Otter merely owns a license to the images by its own admission, and there can be no theft when Otter concedes that STN and Mr. L'Heureux are the true owners of the Alaska Images.  [#12 at 9–10].  Further, the economic loss rule precludes recasting a breach of contract claim as a tort absent distinguishable tortious conduct.  [*Id.* at 10–13].

***Civil Theft and Conversion from a Licensee.*** Defendants argue that a licensee, which Otter pleads that it is as to the so-called Otter Images, cannot sue for civil theft or conversion because those claims require the property to belong to another, which is not the case between a licensee and licensor.  [*Id.* at 9–10].  Otter contends that these claims require only that the other party have exercised some form of unauthorized dominion or ownership over the property at issue such that the other party is deprived of its interest in the property.  [#24 at 11–12].

Conversion and civil theft require an unauthorized act of control or ownership over "personal property belonging to another."  *Rhino Fund, LLLP v. Hutchins*, 215 P.3d 1186, 1195 (Colo. App. 2008), *as modified on denial of reh'g* (Dec. 24, 2008).  A license grants a property interest in the object of the license good against a hypothetical third-party

tortfeasor and a contract right good against the licensor.  The licensor does not transfer any ownership interest in the property to the licensee.  *Xtomic, LLC v. Active Release Techniques, LLC*, 340 F. Supp. 3d 1092 (D. Colo. 2018) ("Where a nonexclusive license exists, the creator or licensor of the work does not transfer ownership of the copyright to the licensee, but simply permits the use of a copyrighted work in a particular manner." (quotations omitted)).  If a third-party broke into Otter's offices and stole the USB drive with the Alaska Images, Otter would have a cause of action against them for replevin for return of the property.  But when Mr. L'Heureux allegedly violates Otter's contract rights in the Images, he only incurs potential liability for breach of contract.  3 Melville B. Nimmer & David Nimmer, Nimmer On Copyright § 10.15[A][1].  This conclusion is closely linked with the economic loss rule discussed below—Mr. L'Heureux cannot incur tort liability for interfering with Otter's contractual rights under the facts as alleged.

**The Civil Theft Claim and the Economic Loss Rule.** The Parties' disagreement centers on the availability of a civil theft claim for a breach of duties owed under a contract.  To resolve the matter before it, the court must substantively interpret divided Colorado law on this subject.  Absent clear guidance from the Colorado Supreme Court, a federal court exercising diversity jurisdiction must make an *Erie* guess as to how that court would rule.  *Pehle v. Farm Bureau Life Ins. Co.*, 397 F.3d 897, 901 (10th Cir. 2005).  If the authority at the state intermediate court is inconsistent or reflects a split of authority, then this court must predict how the State Supreme Court would resolve the ambiguity in light of exiting authority.  *Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1574–75 (10th Cir. 1984).

Most authority cited by the Parties or found by this court's research supports Defendants contention that the economic loss rule precludes a tort—including a civil theft claim—unless the breaching party has violated some duty independent of those duties established in the contract. *See W. Convenience Stores, Inc. v. Thielen*, No. 09-CV-02626- LTB-BNB, 2011 WL 866755, at *7 (D. Colo. Mar. 14, 2011) (holding that economic loss rule barred civil theft claim where the two were "inextricably intertwined"); *Rees v. Unleaded Software, Inc.*, 383 P.3d 20, 28 (Colo. App. 2013) ("[I]t is clear from the allegations that the civil theft claim arises out of the alleged breaches of contract. Thus, the civil theft claim fails because nothing in the complaint could be construed to establish an independent legal duty."), *rev'd in part on other grounds sub nom. Van Rees v. Unleaded Software, Inc.*, 373 P.3d 603 (Colo. 2016); *Makoto USA, Inc. v. Russell*, 250 P.3d 625, 629 (Colo. App. 2009) (applying economic loss rule to preclude civil theft claim).

The lone contrary authority before the court is *Bermel v. BlueRadios, Inc.*, 2017 COA 20, ¶ 22, *cert. granted*, No. 17SC246, 2017 WL 3016382 (Colo. July 3, 2017), which is currently before the Colorado Supreme Court on precisely this issue. Oral argument was held on February 13, 2018. *Bermel* held that the judge-made doctrine of the economic loss rule cannot trump a party's entitlement to the statutory remedy of civil theft. With due respect to the *Bermel* court, this court is not persuaded that *Bermel* is controlling in this situation for several reasons.

First, applying *Bermel* would permit a double recovery as Plaintiff does not plead these claims in alternative to its breach of contract cause of action. If Mr. L'Heureux's single act of retaining the Alaska Images gives rise to double liability for civil theft and

breach of contract, then Otter would recover twice for the same harm.  In fact, Otter would recover additional damages because the civil theft statute authorizes treble damages, costs, and attorney's fees.  C.R.S. § 18-4-405; *A-1 Auto Repair & Detail, Inc. v. Bilunas-Hardy*, 93 P.3d 598, 604 (Colo. App. 2004) ("To be awarded treble damages, attorney fees, and costs under § 18-4-405, a plaintiff need only prove the defendant committed acts constituting one of the statutory crimes of theft.").  Otter has indeed made such a request for statutory enhanced damages.  [#1 at 18].  With exceptions not relevant here, Colorado law disfavors such double recovery.  *Calderon v. Am. Family Mut. Ins. Co.*, 383 P.3d 676, 679 (Colo. 2016); *see also Quist v. Specialties Supply Co.*, 12 P.3d 863, 866 (Colo. App. 2000) ("A plaintiff may not receive a double recovery for the same injuries or losses arising from the same conduct.").  Such additional recovery would also run contrary to the general principle that a breach of contract is not morally blameworthy and a party may not recover more than the measure of its actual loss.  *See Mortg. Fin., Inc. v. Podleski*, 742 P.2d 900, 903 (Colo. 1987).

Second, *Bermel*'s holding was not categorical.  The *Bermel* court recognized that there was contrary authority from the Colorado Court of Appeals—namely *Makoto*—and did not disturb that ruling.  *See Bermel*, ¶ 28 ("disagreeing" with *Makoto* but not overruling); *id.* at n.1 ("We agree that under the facts of *Makoto*, the [other] decision precluded the plaintiff's civil theft claim in that case.").  Thus, even if *Bermel* applied, it is not categorical, and it does not provide any clear rule to guide this court in determining its applicability to the present case.

Finally, the relevant inquiry is whether the Defendant has breached a duty independent of those established in the contract. *Town of Alma v. AZCO Const., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000); *Grynberg v. Agri Tech, Inc.*, 10 P.3d 1267, 1269 (Colo. 2000). In this case, the civil theft and conversion claims do not allege any conduct over than Mr. L'Heureux's failure to execute his contractual duties and deliver the Alaska Images. Plaintiff does not identify any independent tort duty that Defendant breached in so doing. The court's *Erie* guess is that the Colorado Supreme Court's ultimate resolution of *Bermel* will result in the continuing availability of the economic loss rule to civil theft claims arising solely from (non-)performance of contractual obligations. *Accord Rhino Fund, LLLP v. Hutchins*, 215 P.3d 1186, 1194 (Colo. App. 2008), *as modified on denial of reh'g* (Dec. 24, 2008) (declining to apply economic loss rule when the plaintiff had no standing to sue under the contract and thus had only the tort claim to remedy the harm).

**The Conversion Claim and the Economic Loss Rule.** The court finds that the economic loss rule applies to the conversion claim as well when the conversion claim is inextricably intertwined with the performance of contractual obligations and does not implicate independent duties. Contrary to Otter's claim that intentional breaches are distinguishable from negligent breaches in relation to application of the economic loss rule, Colorado courts have expressly rejected that contention. *Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, 229 P.3d 282, 291–92 (Colo. App. 2009), *as modified on denial of reh'g* (June 11, 2009) ("[Other courts], consistent with Colorado law, [focus] on the sources of the duties allegedly breached, not on whether the torts at issue concerned pre- or post-contractual conduct or intentional or merely negligent conduct.").

Plaintiff's authority does not change this analysis. *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1226 (10th Cir. 2000), found there was an independent breach of a fiduciary duty as joint venture partners separate and apart from contractual duties.  Further, the *Wharf* court found that, consistent with Colorado law, fraudulent conduct in contracting may form a separate basis of liability than the contract itself.  *Id.* That is not the case here where there was no independent commission of an intentional tort.   The court comes to the same conclusion regarding Plaintiff's other authority; Colorado law exempts intentional torts from the economic loss rule when the commission of the independent tort is distinct from performance of the contract obligations. *Engeman Enterprises, LLC v. Tolin Mech. Sys. Co.*, 320 P.3d 364, 372 (Colo. App. 2013) ("[M]erely proving willful and wanton conduct is not sufficient to avoid the economic loss rule. . . . [D]ivisions of this court have repeatedly applied the economic loss rule to bar intentional tort claims when no independent duty of care existed.").  Hewing to the Colorado Supreme Court's consistent holding that the source of the duty determines the applicability of the economic loss rule, *Town of Alma*, 10 P.3d at 1264; *Grynberg*, 10 P.3d at 1269, the court finds that the conversion claim at issue here is barred by the economic loss rule and recommends dismissal on this basis.

**Claim Five.**  In Claim Five, Otter alleges that Defendants' retention of the Alaska Images constitutes unjust enrichment under Colorado law.  [#1 at ¶¶ 75–77].  Defendants argue that unjust enrichment is unavailable as a claim where there are other adequate remedies at law.  [#12 at 13–14].  Otter counters that the unjust enrichment claim is made in the alternative to the breach of contract claim, and thus dismissal on this point would

be improper at this juncture.  [#24 at 15–16].  The court agrees with Otter; even if the unjust enrichment claim is inconsistent with the breach of contract claim—the former is an equitable remedy presuming no contract or a contract implied at law while the latter obviously requires an actual contract—there is no reason that Otter cannot assert alternate grounds for relief in the Complaint.  Claim Five states a plausible and permissible claim for relief, and dismissal is not recommended.

## CONCLUSION

For the foregoing reasons, this court respectfully **RECOMMENDS** that:

(1)     Defendants' Motion to Dismiss Under FRCP 12(b)(6) and 12(b)(1) [#12] be

**GRANTED IN PART and DENIED IN PART**; and

(2)     Claims Three and Four of the Complaint be **DISMISSED**.[4]


DATED: January 15, 2019                    BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge

---

[4] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 E. 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).